IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHILO INN, SEASIDE OCEAN FRONT, LLC,

    Plaintiff,

v.

JAMES GRANT, dba TouchStone Granite & Marble and dba J. Grant and Associates,

    Defendant/Debtor

 and

MARYLAND CASUALTY COMPANY, a foreign insurance corporation,

    Garnishee.

08-CV-618-BR

OPINION AND ORDER

CHARLES R. MARKLEY
DANIEL L. STEINBERG
Greene & Markley, PC
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
(503) 295-2668

    Attorneys for Plaintiff

1 - OPINION AND ORDER

**STEPHEN C. HENDRICKS**
Hendricks Law Firm, PC
1425 S.W. 20th Avenue, Suite 201
Portland, OR 97201
(503) 241-1633

      Attorneys for Defendant

**GREGORY L. BAIRD**
**ANDREW S. MOSES**
**ELAINE J. BROWN**
Gordon & Polscer, LLC
9755 S.W. Barnes Road, Suite 650
Portland, OR 97225
(503) 242-2922

      Attorneys for Garnishee

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Shilo Inn, Seaside Oceanfront LLC.'s (Shilo) Motion for Summary Judgment (#27) and Garnishee Maryland Casualty Company's (Maryland Casualty) Cross-Motion for Summary Judgment (#31). For the following reasons, the Court **DENIES** Shilo's Motion, **GRANTS** Maryland Casualty's Cross-Motion, and **DISMISSES** this action with prejudice.

**I**

**NATURE OF THE ACTION**

In April 2008, Shilo filed a Writ of Garnishment in the Circuit Court for the State of Oregon in Multnomah County against

Defendant James Grant (Grant) as Debtor.  The Writ noticed Maryland Casualty as Garnishee.

Shilo alleged it is the Judgment Creditor and Grant is the Judgment Debtor on a debt in the amount of $523,032.59.  Shilo placed Maryland Casualty on notice it was garnishing insurance proceeds that might be available to Grant up to the amount of $321,696.93 based on an insurance policy Maryland Casualty issued to Grant.[1]

On April 29, 2008, Maryland Casualty filed a response to the Writ of Garnishment in which it asserted it may hold insurance proceeds of the Judgment Debtor, Shilo, but was unsure of the amount.

On May 20, 2008, Maryland Casualty removed the Writ of Garnishment proceeding from state court to this Court based on diversity jurisdiction under 28 U.S.C. §1332(a).

On May 27, 2008, Shilo filed a pleading against Garnishee Maryland Casualty Company specifying that it had obtained a judgment against James Grant (Grant) "on account of Grant's negligent actions and inactions resulting in property damage to [Shilo's] hotel facility caused by one or more occurrences of water intrusion commencing approximately in March, 2003, and continuing through the date of these allegations."  Maryland

---

[1] In a separate proceeding, Shilo reached a settlement with another insurer.  That settlement has no bearing on the specific issue in this case.

3 - OPINION AND ORDER

Casualty denied the allegations and asserted, *inter alia,* affirmative defenses that damages awarded to Shilo against Grant were not covered or were excluded under the insurance policy Maryland Casualty issued to Grant.

The issue here is whether all or part of the Judgment against Grant is covered under that insurance policy.  If the Court determines the CGL policy issued by Maryland Casualty does cover at least some of Grant's judgment debt, the issue remains as to whether Shilo is entitled to its attorney fees incurred in this action pursuant to Ore. Rev. Stat. 742.061.

## II

### UNDISPUTED FACTS

The facts are drawn from uncontroverted allegations in the parties' pleadings, the Concise Statements of Material Fact and responses submitted by the parties in support of and in opposition to the Cross-Motions for Summary Judgment filed in both cases, and other facts that counsel for both parties agreed upon during the August 6, 2009, oral argument on the pending Cross-Motions.

The facts set forth in the parties' concise statement are deemed admitted if they are not specifically denied.  *See* Local Rule (LR) 56.1(f).

4 - OPINION AND ORDER

**a.    Shilo/Grant Contract**.

The dispute between Shilo and Maryland Casualty arises out of Grant's inadequate performance of a work contract with Shilo.[2]

David Steiner, Shilo's Director of Maintenance, has been designated as Shilo's corporate representative under Fed. R. Civ. P. 30(b)(6) for purposes of providing deposition testimony on behalf of Shilo.  The evidence reasonably available to Shilo and, therefore, its corporate knowledge of the circumstances surrounding Grant's performance and/or non-performance of his contract with Shilo, is provided through Steiner.

   1.    Scope of Work.

In late April or early May 2001, Grant contracted with Shilo to install granite tub surrounds, vanity tops, kitchen counter tops, and bar counters at Shilo's Oceanfront Hotel in Seaside, Oregon.  Grant was to be paid $160,302 for the work.  For reasons not relevant to the issues before the Court, the work on the project did not begin until March 2003.

   2.    Quality of Work.

Almost from the start of the project, Shilo noticed flaws in Grant's work.  In May 2003, a review of Grant's work revealed,

---

[2] Grant is the real party in interest to each contract, although his dba, Touchstone Granite & Marble, is named as the party to the contract with Shilo, and his dba, J. Grant & Associates, is named as the party to the contract with Maryland Casualty.  For ease of reference, the Court refers to both entities as "Grant."

5 - OPINION AND ORDER

*inter alia,* that much of the granite slab work in the tub surrounds would need to be redone because the gaps between the slabs and the tubs were unacceptable.

    3.   <u>Remediation</u>.

Grant stopped working on the project on June 5, 2003. Shilo hired a replacement contractor to complete the project.

**b.**   **<u>Arbitration</u>**.

On March 26, 2004, in Multnomah County, Oregon, Shilo filed a Complaint in Arbitration against Grant, alleging claims for breach of contract and negligence arising from 16 specified categories of defects, including the installation of granite that did not fit properly, and improper caulking and sealing of granite. Shilo sought a total of $580,481 damages based on the following: (1) The reasonable expenses incurred to return the rooms to rentable condition, in the amount of $32,036; (2) the reasonable value of lost rent in the meantime, in the amount of $82,500;(3) the reasonable value of repairing Grant's poor workmanship, in the amount of $373,695; and (4) the reasonable value of lost room revenues while the repairs were being performed, in the amount of $92,250.

Following a hearing in September 2005, the arbitrator found much of the work done by Grant was "defective and faulty," including "shower surrounds [] installed with granite panels having unacceptable lipping, gaps between panels. . . . As a

6 - OPINION AND ORDER

result, water intrusion has occurred behind the granite panels in many of the rooms, and the risk exists for water intrusion in others." Nevertheless, the arbitrator also found the evidence did not establish the extent of any mold problem and there was "little evidence" of any "water intrusion behind the granite." Shilo did not agree with the statement that there was "little evidence" of water intrusion behind the granite but did not have any evidence itself of such water intrusion.

The arbitrator awarded, *inter alia,* $875 for each tub surround, $64,750 for costs of removing improperly installed granite, and $189,440 to cover cost of labor and material used in the installation of new granite. The total arbitration award was $373,795, plus attorneys fees of $140,000.

On January 11, 2006, the Circuit Court for the State of Oregon in Multnomah County entered a Judgment in favor of Shilo against Grant for these amounts, plus pre- and post-judgment interest.

**c.    Grant's Insurance Policy with Maryland Casualty.**

On March 6, 2003, in Oregon, Maryland Casualty issued a Commercial Property and General Liability insurance policy (Policy) to Grant. Grant cancelled the policy on June 1, 2003.

1.    Relevant Coverage Provisions.

The policy provides coverage for "property damage" caused by an "occurrence" that took place "during the policy period."

7 - OPINION AND ORDER

*See* Policy, Section I, Coverage A, Bodily Injury and Property Damage Liability, § 1b(2).

An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.,* Section V, Definitions and Restrictions, § 13.

"Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Loss of use is "deemed to occur at the time of the physical injury." *Id.,* § 17a. Property damage also includes "[l]oss of use of tangible property that is not physically injured." *Id.*, § 17b.

2. Relevant Exclusion Provisions.

The policy contains the following relevant exclusions from coverage:

"Property damage" to "[t]hat particular part of real property on which you . . . are performing operations, if the 'property damage' arises out of those operations" or for property damage to '[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." *Id.,* Section I, Coverage A, Bodily Injury and Property Damage Liability, § j(5) and (6);

"'Property damage' to 'your product' arising out of it or any part of it." *Id.*, § k;

8 - OPINION AND ORDER

"'Property damage' to 'your work' arising out of it and included in the 'products-completed operations hazard;" *id.*, § l;

"'Property damage' to 'impaired property' or 'property that has not been physically injured, arising out of a defect, deficiency, inadequacy' . . . in 'your product' or 'your work';" *id.*, § m(1).

By endorsement, the policy also excluded coverage for "property damage" that is "caused directly or indirectly, in whole or in part, by 'fungus(es),'" which include "any form or type of mold." *Id.*, Fungus Exclusion.

### III

### **STANDARDS**

**a.     Summary Judgment.**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a

9 - OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, however, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**b.    Garnishment of Insurance Policy Proceeds.**

In a garnishment proceeding, the "garnishor is subrogated to the right that the judgment debtor has against the garnishee." *McLeod v. Tecorp Intern.* Ltd., 318 Or. 208, 212 (1993), *citing Smith v. Conrad,* 23 Or. 206 (1892). Thus, the judgment creditor (garnishor) has no greater rights against the garnishee than the

10 - OPINION AND ORDER

judgment debtor. *State Farm & Cas. Co. v. Reuter,* 299 Or. 155, 164 (1985). Accordingly, a garnishor "must rely upon the judgment against [the judgment debtor] as a basis for [an] action against the insurer" of the judgment debtor for the purpose of recovering under the judgment debtor's insurance policy. *Jarvis v. Indem. Ins. Co.,* 227 Or. 508, 512 (1961). The garnishor must prove "that the former judgment was based upon evidence which identified it as one within the coverage of the insurer's obligations." *Id.*

c.  **Interpretation of Policy Terms - Oregon Law.**

"[E]very contract of insurance shall be construed according to the terms and conditions of the policy." Ore. Rev. Stat. 742.016. "The interpretation of an insurance policy is a question of law." *Hoffman Construction Co. v. Fred S. James & Co.,* 313 Or. 464, 469 (1992). "The court's goal in interpreting a policy is to determine the intent of the parties." *Id.* "If a term of the policy is ambiguous, then the court employs a rule of construction by which the question of the meaning of the term is resolved by construing the term against the drafter of the policy." *Id.* at 470. "Any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company and in favor of extending coverage to the insured." *Id.*

11 - OPINION AND ORDER

Although a CGL insurance policy may provide that the "occurrence" giving rise to property damage must take place during the policy period, such property damage that does result from the occurrence need not manifest itself during the policy period for coverage to apply. *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 126 Or. App. 689, 699 (1994), *aff'd*, 324 Or. 184, 202 (1996).

## IV

### DISCUSSION

The Court addresses preliminary issues relating to whether federal or state substantive law should be applied in this case, and whether the Court has subject-matter jurisdiction, followed by a discussion of the merits of the case.

**a.   Preliminary Issues.**

The Court asked the parties to address the following procedural issues: (1) Whether Fed. R. Civ. P. 69(a)(1) applies to this action because it involves a garnishment proceeding in aid of the collection of a money judgment; (2) whether all of the parties are diverse for purposes of federal court subject matter jurisdiction; and (3) whether state or federal law is to be applied by the Court.

1.  <u>Fed. R. Civ. P. 69(a)(1)</u>.

The parties agree and the Court concurs that Rule 69(a)(1) applies only to execution and garnishment procedures arising from money judgments entered in federal courts and, therefore, does not apply here because the pending Writ of Garnishment proceeding is based on a money judgment entered in state court. In any event, as the parties note, Rule 69(a)(1) provides that the procedure to execute a money judgment entered in federal court must comply with the procedural rules of the state where the federal court is located.

2.  <u>Diversity of Citizenship</u>.

The parties agree and the Court concurs that this case was properly removed under 28 U.S.C. §1441(a) based on the diverse citizenships of Shilo (Oregon) and Maryland Casualty (Maryland), *see* 28 U.S.C. §1332(a)(1), even though the judgment debtor, Grant, is also an Oregon citizen. The claim in this case involves a discreet, separate dispute between Shilo and Maryland Casualty as to Maryland Casualty's liability under the insurance policy it issued to Grant. Grant's liability to Shilo has already been established and he has no separate interest in the action. *See Monroe v. Roeder*, 583 F. Supp. 1031, 1034 (E.D. Mo. 2008)(a garnishment action against an insurer, in which the insured is merely a "nominal" party, is not a "direct action" in

which the insurer is deemed to be a citizen of the same state as the insured for purposes of diversity jurisdiction under 28 U.S.C. §1332(c)(1). Moreover, Grant's interests in this action are aligned with Shilo in that some or all of the Judgment against him in state court would be satisfied by a Verdict entered in favor of Shilo in this action. *Randolph v. Employers Mutual Liability Ins. Co.,* 260 F.2d 461, 464 (8th Cir. 1958.

Accordingly, there is a complete diversity as to the named parties and those in interest with them.

3.   Choice of Law.

This Court has subject matter jurisdiction based on diversity of citizenship. Accordingly, state substantive law and federal procedural law apply. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

b.   **Insurance Coverage.**

The substantive issue on the Cross-Motions for Summary Judgment is whether Maryland Casualty's CGL insurance policy issued to Grant covers any part of the unsatisfied judgment Shilo obtained against Grant in state court.

During oral argument, Shilo clarified that it seeks reimbursement for property damage only to the extent it arose from Grant's negligent installation of the granite slabs in the bathtub surrounds. Shilo does not seek damages for the studs, framing, and insulation on the inside of the wall that may have

14 - OPINION AND ORDER

been damaged, or for attorneys fees that were awarded by the arbitrator.  Nonetheless, if Shilo prevails in this action, it will seek attorneys fees it has incurred since the arbitration decision, pursuant to Ore. Rev. Stat. 742.061.

Shilo asserts, and Maryland Casualty does not disagree, that Grant's installation left gaps between the granite slabs and bathtub surrounds through which water intrusion occurred. Shilo's claim to coverage for property damage under Maryland Casualty's CGL policy rests on its contention that, during the policy period, Grant negligently installed granite that allowed for water to intrude into the bathtub surrounds in those hotel rooms in which Grant installed the granite.  As such, under the policy language, any damages incurred by Shilo arising from the loss of the use of those rooms are covered under the policy, even if the property damage caused by water intrusion manifested itself after the policy period ended.  *See* Policy, Section V, Definitions and Restrictions, § 13 and 17b.  Nevertheless, the conditions that allowed for water intrusion must have occurred during the policy period.

The beginning and ending point of this discussion rests on the specific findings of the Arbitrator, whose decision led to the state court monetary Judgment that gave rise to the Writ of Garnishment now pending in this Court.  The facts found by the Arbitrator are binding on the parties, and on this Court may

15 - OPINION AND ORDER

neither expand nor narrow the scope of the Arbitrator's findings.

Accordingly, it is not this Court's role to reevaluate the evidence presented to the Arbitrator, make additional evidentiary findings, or second-guess the Arbitrator's findings based on the evidence presented to him.  This Court's role is limited to comparing the Arbitrator's findings to the policy coverages and determining whether the moving parties on the Cross-Motions before this Court have established as a matter of law that each or any item of property damage found by the Abitrator is or is not within the coverage, *i.e.,* that such damage does or does not arise from an occurrence during the policy period and, if so, whether such damage is or is not subject to an exclusion.  If a particular item of property damage is covered under Maryland Casualty's CGL policy issued to Grant, proceeds from the policy would be subject to garnishment as to that damage item.

c.      **Analysis of the Aribtration Decision**.

As noted, the Arbitrator found Shilo was entitled to recover a total of $373,795 arising from Grant's "defective and faulty" performance of the work done for Shilo.  The Arbitrator set forth his reasons and itemized each of the damages that flowed from Grant's negligence.  The Court addresses each specific work item that was negligently performed and the damages arising from that work item.  The Court then addresses whether those damages are covered or excluded under the CGL policy Maryland Casualty issued

to Grant.

1. <u>Negligent Installation of Granite Panels in Shower Surrounds</u>.

The Arbitrator found granite panels were defectively installed in the shower surrounds of 74 rooms.  He awarded Shilo damages in the amount of $875 per room for preparation and demolition costs.  The total damages for this item are $64,750.

As noted, Maryland Casualty's policy excludes coverage for property damage to '[t]hat particular part of any property that must be <u>restored</u>, <u>repaired</u>, or <u>replaced</u> because 'your work' was incorrectly performed on it."  (Emphasis added).  *See* Policy, Section I, Coverage A, Bodily Injury and Property Damage Liability, § j(6).  Accordingly, this item of damage is excluded under the policy.

2. <u>Installation of Replacement Granite</u>.

The Arbitrator awarded Shilo damages in the total amount of $2,560 per room for the cost of installing new granite materials to replace the original granite that was removed from the 74 rooms.  The figure included the cost of the granite - $935 per room, and the cost of the labor to install it - $1,625 per room.  The total damages for this item are $189,440.  For the same reasons that the policy excludes damages arising from the negligent installation of granite, the cost of replacing that granite is also excluded from coverage.

3. <u>Other Granite Replacement Costs and Mitigation</u>.

17 - OPINION AND ORDER

The Arbitrator awarded damages arising from the cost incurred "to repair or replace other granite components" in the amount $94,605 and "mitigation" charges in the amount of $25,000. These costs also are excluded from coverage for the same reasons already noted.

The total amount of damages awarded by the Arbitrator is $373,750.  The Arbitrator did not award any damages for "mold" because there was insufficient evidence of the extent of any mold problem, nor did he award any damages arising from dry rot or any other condition caused by water intrusion.  As explained, however, coverage for such damages is, in any event, is excluded under the Maryland Casualty policy.

4. <u>Summary</u>.

The only moneys that are subject to garnishment in this case are those that were specifically awarded to Shilo in the arbitration proceeding, and which were incorporated in the state court Judgment that is the predicate for this garnishment proceeding.  None of those damages are covered under Maryland Casualty's CGL policy issued to Shilo.

**V**

**CONCLUSION**

For all the reasons stated above, the Court **DENIES** Shilo's Motion for Summary Judgment (#27), **GRANTS** Maryland Casualty's Cross-Motion for Summary Judgment (#31), and **DISMISSES** this

18 - OPINION AND ORDER

action with prejudice.

    IT IS SO ORDERED.

    DATED this 24th day of August, 2009.


                                            /s/ Anna J. Brown
                                          ANNA J. BROWN
                                          United States District Judge